POLO FASHIONS, INC., Plaintiff,

v.

BRANDED APPAREL MERCHANDIS-
ING, INC. and Larry Taylor,
Defendants.

Civ. A. No. 83–2252–MA.

United States District Court,
D. Massachusetts.

Sept. 12, 1984.

Thomas J. Dougherty, Lori Weiner Lander, Skadden, Arps, Slate, Meagher & Flom, Boston, Mass., for plaintiff.

Bernard A. Dwork, Enid Starr, Barron & Stadfeld, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action for trademark infringement and unfair competition. The plaintiff, Polo Fashions, Inc. (Polo) has moved for summary judgment as to liability against defendant Branded Apparel Merchandising, Inc. (Branded) and Larry Taylor (Taylor). This Court has jurisdiction of the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338.

## I.

Polo manufactures a wide line of designer clothing including short-sleeve knit shirts. Branded is a clothing wholesaler. Taylor, an individual, was the president of Branded prior to December, 1983.

Polo claims that on May 25, 1982, Taylor, on behalf of Branded, purchased 224 counterfeit short-sleeve knit shirts in New York. Taylor later sold the shirts to both Vermont Morgan Corporation (Vermont Morgan) and other distributors. One of the shirts sold to Vermont Morgan has been produced as an exhibit in this case. The shirt has a fabric neck label reading "Polo by Ralph Lauren" and an emblem embroidered in the chest area that depicts a mounted polo player. There is uncontroverted evidence that this shirt was sold to Vermont Morgan by the defendants and that it is indeed counterfeit. Neither defendant has produced any evidence to dispute Polo's claim that it holds valid trademark registrations for both the label and the distinctive emblem. Both defendants admit that all 224 shirts in question had similar neck labels and emblems. There is no direct evidence that any or all of the other shirts were counterfeit. The defendants maintain that there is a genuine dispute of fact as to whether those shirts were counterfeit, but have failed to produce any evidence that they were authentic.

Polo's three count complaint claims the following. First, the defendants infringed on its valid, registered trademark and Polo is entitled to relief under 15 U.S.C. § 1114(1) *et seq.* Second, the defendants' sale of the counterfeit shirts constituted the use in commerce of a false designation of origin and thus violated 15 U.S.C. § 1125(a). Third, the defendants' sale of counterfeit shirts constituted unfair competition under the common law. Polo has moved for summary judgment as to liability under Fed.R.Civ.P. 56(a).

## II.

■ To defeat a motion for summary judgment under Rule 56(a), the opposing party must produce substantial evidence of a genuine dispute of a material fact. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). A material issue is one that "affects the outcome of the litigation." *Id.* A genuine dispute is one that arises from evidence sufficient to require either a judge or a jury to resolve the various versions of the facts at trial. *Id.,* (quoting *First National Bank of Arizona v. Cities Service Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). In deciding a motion for summary judgment, all doubts must be resolved in favor of the opposing party. *Hahn v. Sargent,* 523 F.2d at 464.

### 1. *Polo's Claim of Trademark Infringement*

■ Under 15 U.S.C. § 1114(1), any person who sells goods bearing a counterfeit registered trademark such that the sale is likely to cause confusion among potential customers is civilly liable to the registrant. *Pignons S.A. de Mecanique, Inc. v. Polaroid Corp.,* 498 F.Supp. 805, 810 (D.Mass. 1980), *aff'd,* 657 F.2d 482 (1st Cir.1981). The registrant need not prove intent to deceive in order to recover. *Id.,* 498 F.Supp. at 817.

As noted above, the defendants have produced no evidence rebutting Polo's claim that it holds registered trademarks in both the label and the emblem on the shirt in evidence. Although the Court is to view the evidence in the light most favorable to the non-moving party, the Court is "not required to ignore clear uncontradicted facts." *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201 (1st Cir.1983). Polo has submitted photocopies of its trademark registration papers clearly depicting a neck label and emblem indistinguishable from those on the shirt in evidence.

Polo has also submitted a sworn affidavit by its director of quality control stating that the shirt in question is undoubtedly counterfeit. The defendants have produced no evidence contradicting this nor have

they produced any evidence showing that they did not sell the shirt to Vermont Morgan. Polo has submitted sales receipts and a sworn statement indicating that the shirt was sold by the defendants to Vermont Morgan.

■ To succeed on its motion, however, Polo bears the additional burden of submitting some evidence that sale of the shirts created a substantial likelihood of consumer confusion. *Fisher Stoves, Inc. v. All Nighter Stove Works,* 626 F.2d 193, 194 (1st Cir.1980). Polo need not prove actual confusion. *Id.* The following factors are among those usually considered in determining whether use of a mark similar to a registered mark is likely to create the degree of confusion required to violate the statute: the similarity of the marks; the similarity of the goods; the classes of prospective purchasers; and the strength of the plaintiff's mark. *Pignons,* 657 F.2d at 487.

■ As applied to this case, these factors demonstrate a clear and substantial likelihood that prospective consumers would be confused by the defendants' use of Polo's neck label and emblem on knit shirts. First, the marks on the shirt in evidence are indistinguishable from those depicted in Polo's trademark registration papers and those located on a second, genuine "Polo by Ralph Lauren" shirt that has also been submitted to this Court. The shirts themselves, while not identical, are also very similar. Both the counterfeit and genuine shirt in evidence are short-sleeved, made of inter-locking knit fabric, and have similar neck plackets. The major differences between the shirts were pointed out by Polo's director of quality control, and include such insignificant factors as the color of the thread securing the buttons, the weave of the tape covering the neck seam, and the stitching of the side vents. The defendants have not and probably could not introduce evidence that consumers would not be confused by the similarity of the shirts.

Additionally, there is no evidence of any difference in the classes of prospective purchasers. Polo's director of quality control has stated in a signed affidavit that the counterfeit shirt is "directly competitive with and commercially substitutable for genuine Polo goods." Polo's president signed a similar affidavit. Although this may be scant evidence on which to rely, the defendants have offered no evidence to rebut the statements that genuine and counterfeit Polo shirts compete in the same market.

Finally, "strong" trademarks are generally accorded broader protection against infringement than are "weak" marks. *Pignons,* 657 F.2d at 492. A strong mark is "one which is used only in a fictitious or fanciful manner; whereas a weak mark is one that has meaning in common usage, or one that is merely suggestive or descriptive." *Id.,* 498 F.Supp. at 814 (citation omitted). The embroidered Polo logo is clearly a fanciful, rather than a descriptive mark. The label mark, "Polo by Ralph Lauren," is even more distinctive. Polo has submitted a sworn statement by its president detailing the volume of its extensive sales and stating that both marks have acquired a strong secondary meaning in the clothing market. The defendants have offered no evidence to rebut this assertion.

Even viewing the evidence in the light most favorable to the defendants, it is clear that Branded's sale of counterfeit shirts was highly likely to confuse consumers. Polo, therefore, is entitled to summary judgment as to liability at least for the one counterfeit shirt in evidence.

The more difficult question is whether the defendants are liable for the other 223 shirts that they sold to Vermont Morgan and other distributors. Polo has submitted evidence that the counterfeit shirt in evidence was "exemplary" of the other 223 shirts and that all the other shirts bore the same neck labels and embroidered emblems. The defendants have introduced no evidence tending to rebut the inference raised by this evidence, namely that all the

shirts were counterfeit.[1] I therefore find for the plaintiff on its first count.

### 2. Polo's Claim of False Designation of Origin

 Under 15 U.S.C. § 1125(a), the defendants are liable for appropriation of the "goodwill associated with a competitor's trademark by means of confusingly similar marking and packaging," if such marking creates the impression that the products of the defendants originated with the plaintiff. *Purolator, Inc. v. EFRA Distributors, Inc.*, 687 F.2d 554, 561 (1st Cir.1982). Under the statute, the elements of such a violation consists of (1) using a symbol that falsely describes an article and (2) causing such article to enter into commerce. 15 U.S.C. § 1125(a). Intent is not a necessary element of a claim under this section. *Purolator* at 561. As discussed above, the markings on the counterfeit shirt are indistinguishable from the valid, registered trademarks. The above discussion of the likelihood of consumer confusion is equally applicable to Polo's second count of false designation of origin. Therefore, Polo is entitled to summary judgment on the issue of liability on this count.

### 3. Polo's Common Law, Unfair Competition Claim

 Polo's final claim is that it has been the victim of unfair competition under the common law. In the absence of any argument to the contrary, I apply the law of Massachusetts to this related common law claim. *Phoenix Manufacturing Co. v. Plymouth Manufacturing Co.*, 286 F.Supp. 324, 332 (D.Mass.1968). Under Massachusetts law, unfair competition is defined to include, among other things, the marketing of goods bearing an unprivileged imitation of the physical appearance of another's goods. *H.P. Hood & Sons, Inc. v. Whiting Milk Co.*, 345 Mass. 287, 291, 186 N.E.2d 904 (1963) (quoting Restatement of Torts § 711 (1938)). An imita-

tion is unprivileged if the "imitation is likely to cause prospective purchasers to regard [A's] goods as those of [B], and ... the ... imitated feature is nonfunctional...." *Id.*, (quoting Restatement of Torts § 741 (1938)). The essential element of a claim of unfair competition is thus the same as that for the infringement or false designation of origin claim: the plaintiff must prove the likelihood of consumer confusion. *Forster Manufacturing Co. v. Cutter-Tower Co.*, 211 Mass. 219, 222, 97 N.E. 749 (1912) (likelihood of consumer deception is test for finding of unfair competition); *see also C.A. Briggs Co. v. National Wafer Co.*, 215 Mass. 100, 106–107, 102 N.E. 87 (1913) (the gist of unfair competition is appropriation of plaintiff's business); *Quabaug Rubber Co. v. Fabiano*, 567 F.2d 154, 162 (1st Cir.1977) (the essence of the claim is the appropriation of a competitor's business to his injury).

 As noted above, there is a clear and substantial likelihood that a consumer would be deceived as to the origin of the counterfeit shirt as a result of the overwhelming similarity of the shirts and the prominent use of Polo's registered trademarks. I therefore find that Polo is entitled to summary judgment on the unfair competition count.

### III.

 The final issue raised by Polo's motion is whether summary judgment should be granted against Taylor individually. Although a corporate officer is not always individually liable for torts committed while acting on behalf of the corporation, if the officer is a "moving, active conscious force behind [the defendant corporation's] infringement," then the officer will be held personally liable. *Marks v. Polaroid Corporation*, 237 F.2d 428, 435 (1st Cir.1956), *cert. denied*, 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 550. It is immateri-

---

**1.** The defendants having failed to controvert the counterfeit nature of the one shirt, it is inconceivable that they could produce evidence at trial that the other 223 were authentic. In any event, they have had ample opportunity to do so, but have submitted only conclusory argument.

al whether the officer knows that his acts will result in an infringement. *Dean Rubber Manufacturing Co. v. Killian*, 106 F.2d 316, 320 (8th Cir.1939), *cert. denied*, 308 U.S. 624, 60 S.Ct. 380, 84 L.Ed. 521 (quoting *National Cash Register Co. v. Leland*, 94 F. 502 (1st Cir.1899), *cert. denied* 175 U.S. 724, 20 S.Ct. 1021, 44 L.Ed. 337).

In the present case, Taylor has admitted that he sold the 224 shirts to Vermont Morgan and other distributors. In response to Polo's request for admissions, Taylor indicated that he was the only person who "coordinated, initiated, supervised, managed or in any way assisted or participated in" the sale of the shirts. There is also uncontradicted evidence that Taylor is one of three directors of Branded, that he owns 25% of the stock of Branded, and that he fulfills Branded's "sales functions." I therefore find that Taylor is individually liable on all three counts since he was the conscious, moving force behind the sales that infringed on Polo's trademark and common law rights.

### IV.

Since the defendants have failed to introduce sufficient evidence to raise a genuine issue of material fact as to any of the necessary elements of Polo's three claims, the plaintiff's motion for summary judgment as to liability is granted against them on all three counts.

SO ORDERED.