**UNITED STATES of America,
Plaintiff,**

**v.**

**Carlos ZENON and Yabureibo Zenon–
Encarnacion, Defendants.**

**No. Crim.01–693(JAF).**

United States District Court,
D. Puerto Rico.

Jan. 14, 2002.

Jorge E. Vega–Pacheco, U.S. Attorney's Office District of PR, Criminal Division, Hato Rey, PR, Stella J. Song, Special Assistant U.S. Attorney, Walnut, CA, for U.S.

Harry Anduze–Montano, San Juan, PR, Fermin Luis Arraiza–Navas, Rio Piedras, PR, for Defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Defendants, Carlos Zenón and Yabureibo Zenón–Encarnación, are charged with entering the Camp García Naval Installation at Vieques, Puerto Rico, on October 4, 2001, in violation of 18 U.S.C. § 1382 (1994) and 33 C.F.R. § 334.1470 (2001). *Docket Document Nos. 2, 17, 18.* Defendants move to dismiss the indictment. *Docket Document No. 27.* This court finds all of Defendants' arguments to be meritless, and we deny Defendants' motion.

### A.

While Defendants' brief is less than pellucid, it appears that they are arguing that this court does not have jurisdiction to adjudicate the case at bar because we lack special maritime and territorial jurisdiction pursuant to 18 U.S.C. § 7 (1994). *Id.* Special maritime and territorial jurisdiction includes jurisdiction on the high seas, jurisdiction over aircraft belonging to the United States or an American individual or corporation, and jurisdiction over spacecraft. *See* 18 U.S.C. § 7.

In *United States v. Pérez–Herrera,* 610 F.2d 289 (5th Cir.1980), the Fifth Circuit explained that 18 U.S.C. § 7 "is only important when acts within the special jurisdiction violate substantive law, such as 18 U.S.C. §§ 1082 and 1111." *Id.* at 290 n. 2; *see also United States v. Arra,* 630 F.2d 836, 840 (1st Cir.1980).

Numerous federal criminal statutes expressly include the requirement that the prohibited conduct occur within the special maritime and territorial jurisdiction of the United States as one of the elements of the crime. *See, e.g.,* 18 U.S.C. § 81 (1994) (arson); 18 U.S.C. § 113 (1994) (assault); 18 U.S.C. § 114 (1994) (maiming); 18 U.S.C. § 1111 (1994) (second-degree murder); 18 U.S.C. § 1112 (1994) (manslaughter); 18 U.S.C. § 2241 (1994) (aggravated sexual abuse).[1]

■ The statute that Defendants are charged with violating, 18 U.S.C. § 1382, reads: "Whoever, within the jurisdiction of the United States, goes upon any military, naval, or Coast Guard reservation, post, fort, arsenal, yard, station, or installation, for any purpose prohibited by law or lawful regulation ... [s]hall be fined under this title or imprisoned not more than six months, or both." 18 U.S.C. § 1382. The statute does not expressly provide that occurrence within the special maritime and territorial jurisdiction of the United States is an element of the crime. Therefore, we are not convinced that 18 U.S.C. § 7 is relevant to the present case.

■ Moreover, even if occurrence within the special maritime and territorial jurisdiction were an element of the crime of trespassing on a military base, this court would clearly have such jurisdiction over the case at bar. The waters immediately adjoining the land controlled by the Navy at Vieques island are part of Camp García, and such waters fall within the special maritime and territorial jurisdiction in accordance with 18 U.S.C. § 7(3).[2] *See*

---

1. In *Perez–Herrera,* the Fifth Circuit mentioned 18 U.S.C. § 1082, which does not expressly include the phrase "special maritime and territorial jurisdiction." 610 F.2d at 290 n. 2. Nevertheless, the statute, which pertains to gambling ships, does refer to vessels on the high seas in language paralleling that of 18 U.S.C. § 7(1).

2. The statute provides:

The term "special maritime and territorial jurisdiction of the United States", as used in this title, includes:

. . . .

(c) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort,

*United States v. de Jesus,* 108 F.Supp.2d 68, 70, 72 (D.P.R.2000) (assault case); *cf. United States v. Bello,* 194 F.3d 18, 21–23 (1st Cir.1999) (Fort Buchanan, another federal military installation on Puerto Rico, falls within 18 U.S.C. § 7(3)).

### B.

In addition, Defendants argue that 33 C.F.R. § 334.1470 (2001) was improperly promulgated pursuant to 33 U.S.C. § 1 (1994) instead of 33 U.S.C. § 3 (1994). *Docket Document No. 27.* Defendants complain that the regulation unreasonably affects the fishing industry in Puerto Rico. *Id.*

"Judges are not expected to be mind readers. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (internal citation omitted). Defendants have not cited any case law supporting their conclusory contention that the promulgation of 33 C.F.R. § 334.1470 was somehow improper. Defendants have not explained why the regulation purportedly should have been adopted pursuant to 33 U.S.C. § 3 instead of 33 U.S.C. § 1. The mere fact that Defendants are displeased with the regulation's effect on the local fishing industry does not render it invalid.

### C.

■ In addition, Defendants aver that they did not violate 18 U.S.C. § 1382 because they did not enter any of the land areas controlled by the Navy. *Docket Document No. 27.* Defendants maintain that entrance into the waters of the naval installation at Vieques does not violate 18 U.S.C. § 1382. *Id.*

Defendants' alleged entrance into the waters of Camp García can constitute a trespass in violation of section 1382. *See de Jesus,* 108 F.Supp.2d at 70. Defendants need not set foot on dry land to be found in violation of the statute. Therefore, we dismiss Defendants' argument.

### D.

■ Defendants asseverate that they did not have fair warning that entrance into the danger zone[3] at Vieques island was prohibited. *Docket Document No. 27.* Defendants claim that this lack of warning violated their due process rights. *Id.* Defendants are apparently arguing that section 1382 is void for vagueness.

Defendants' argument is utterly frivolous. *See de Jesus,* 108 F.Supp.2d at 73. Section 1382 clearly states that persons who go onto any naval installation for any purpose prohibited by law are subject to a fine and up to six months of imprisonment. 18 U.S.C. § 1382. "Any person entering or remaining on U.S. Naval installations and properties in Puerto Rico, without the advance consent of [appropriate] officials . . . shall be considered to be in violation of these regulations and therefore subject to the penalties prescribed by 18 U.S.C. § 1382." 32 C.F.R. § 770.40 (2001). The exact coordinates of the danger zone from Punta Conejo on the south coast of Vieques to Cabellos Colorados on the north coast are outlined in 33 C.F.R. § 334.1470(a). The statutes and regulations clearly gave Defendants notice that

---

magazine, arsenal, dockyard, or other needful building. •
18 U.S.C. § 7(3).

**3.** A danger zone is "[a] defined water area (or areas) used for target practice, bombing, rocket firing or other especially hazardous operations, normally for the armed forces. The danger zones may be closed to the public on a full-time or intermittent basis, as stated in the regulations." 33 C.F.R. § 334.2 (2001).

their presence in the zone of danger was unlawful.

Furthermore, twenty-two years ago, one of the Defendants, Carlos Zenón, was convicted of violating section 1382 after entering a zone of danger at Vieques island. *See United States v. Saade*, 652 F.2d 1126, 1129 (1st Cir.1981).[4] Carlos Zenón was one of the persons aboard a flotilla of eleven boats that knowingly entered the zone of danger for the purpose of hampering military exercises. *Id.* at 1130. The persons aboard the trespassing vessels used slingshots to fire lead pellets at law enforcement agents. *Id.* One of the boats of the flotilla rammed into one of the ships used by United States deputy marshals seeking to enforce the law. *Id.* Carlos Zenón served a sentence of six months of imprisonment for his wrongdoing. *Id.* at 1129. He cannot reasonably argue that he was unaware that his alleged entrance into a zone of danger on October 4, 2001 was prohibited by law.

### E.

Defendants also argue that the United States does not own the zone of danger where they were allegedly found, so a conviction against them cannot be sustained. *Docket Document No. 27.* Defendants claim that the Commonwealth of Puerto Rico holds that property in trust for the public. *Id.*

An individual may be convicted of violating section 1382 in instances where the government does not own the property in question. *United States v. Ventura–Meléndez*, 275 F.3d 9 (1st Cir.2001). "[W]hen the government does not own the land, § 1382 requires only that the government demonstrate either a possessory interest in, or occupation or control of, the area reserved by the military." *Id.*

Here, the Navy has continuously occupied and controlled Camp García and has used the area for military exercises. Therefore, we dismiss Defendants' argument.

### F.

Defendants further submit that the Navy did not adhere to the alleged requirement that notice be given at least two weeks in advance of activation of a temporary danger zone in accordance with 33 C.F.R. § 334.3(c) (2001). *Docket Document No. 27.*

Section 334.3(c) of the federal regulations does not pertain to the present case. If a danger zone is to be used only intermittently and formal regulations are not promulgated, the United States Coast Guard is required to give mariners at least two weeks' notice that the military intends to use the waters for its exercises. 33 C.F.R. § 334.3(c). Where regulations have been adopted governing a particular danger zone, two weeks' notice is not required. *See de Jesus*, 108 F.Supp.2d at 71. Here, 33 C.F.R. § 334.1470 specifically applies to the zone of danger surrounding Vieques, and the regulation does not impose the requirement of two weeks' notice requested by Defendants. Consequently, we reject Defendants' argument.

### G.

In accordance with the foregoing, we **DENY** Defendants' motion to dismiss the indictment, *Docket Document No. 27.*

**IT IS SO ORDERED.**

---

4. Defendant(s) may very well have records of other previous convictions for the same offense. The record is unclear about that issue at this juncture.